1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARKUS TATUM,

11          Plaintiff,                    No. CIV S-02-2597 FCD KJM P

12      vs.

13   T.L. ROSARIO, et al.,                ORDER AND

14          Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with an action for violation of civil

17   rights under 42 U.S.C. § 1983.  The motion to dismiss brought by defendants Pliler, Rosario,

18   Alameida, Haythorne and Hill[1] on September 1, 2004 is before the court, as is plaintiff's motion

19   for relation back and defendants' motion to stay discovery.

20   1. Failure to Exhaust

21          Defendants argue that plaintiff failed to exhaust administrative remedies with

22   respect to all of his claims prior to filing suit.  Mem. P. & A. in Supp. Mot. to Dismiss (MTD) at

23   4-8.  A motion to dismiss for failure to exhaust administrative remedies prior to filing suit arises

24   under Rule 12(b) of the Federal Rules of Civil Procedure.  Wyatt v. Terhune, 315 F.3d 1108,

25   _____

26          [1] On April 15, 2004, based on 28 U.S.C. § 1915A, the court ordered that service of
     process was appropriate for these defendants.

1

1119 (9th Cir. 2003).  It is defendants' burden to show that plaintiff failed to exhaust.  Id.  In

deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look

beyond the pleadings and decide disputed issues of fact.  Id. at 1120.  If the district court

concludes that the prisoner has not exhausted non-judicial remedies, the proper remedy is

dismissal without prejudice.  Id.

       Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action

shall be brought with respect to prison conditions under section 1983 of this title, . . . until such

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  California prison

regulations provide administrative procedures in the form of one informal and three formal levels

of review to address plaintiff's claims.  See Cal. Code Regs. tit. 15, §§ 3084.1-3084.7.

Administrative procedures generally are exhausted once a prisoner has received a "Director's

Level Decision" (completed third level review) with respect to his claims.  Cal. Code Regs. tit.

15, § 3084.5.  All available steps must be completed before a civil rights action is filed;

exhaustion during the pendency of the litigation will not save an action from dismissal.

McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002).  The Ninth Circuit recently, however,

has determined that denial of a grievance on purely procedural grounds serves to exhaust that

grievance, in light of the institution's election not to accept the complaint despite the discretion

to do so.  Ngo v. Woodford, 403 F.3d 620 (9th Cir. 2005).

       Plaintiff's claims will be considered exhausted if plaintiff, in his prison

grievances, gave the prison officials fair notice of the alleged mistreatment or misconduct that is

the basis of the claims made against the defendants in this action.  See Burton v. Jones, 321 F.3d

569, 575 (2003).

/////

/////

/////

/////

A.  Claims Exhausted Or Accruing After November 15, 2002

Plaintiff's claims that are dependent upon events occurring after plaintiff's complaint was filed on November 15, 2002,[2] must be dismissed under McKinney's requirement of pre-litigation exhaustion.  These claims include those dependent upon facts alleged in paragraphs 32, 39 to 48, and 110 to 130.  See First Am. Compl. (filed May 14, 2003).[3]  Because all of the substantive allegations concerning defendant Hill are found in these paragraphs, he should be dismissed.

The parties agree that plaintiff completed the inmate grievance procedure two times prior to the time this action was filed.  The grievances are attached to defendants' motion to dismiss as Exhibits A and B and plaintiff's opposition as Exhibits A and D.  To the extent plaintiff presents claims that are not covered by these grievances, plaintiff has failed to exhaust available administrative remedies and these claims also must be dismissed.  See McKinney, 311 F.3d at 1200.[4]  The court reviews these grievances below to determine which claims survive defendants' failure to exhaust defense.

B.  Grievance 99-02216

As noted by defendants, this 1999 grievance concerns activities that occurred at Pelican Bay State Prison and the grievance process was completed by "Director's Level Review" on September 8, 2000.  MTD at 5:19-6:7 & Ex. A; Opp'n, Ex. A.  In his verified complaint, plaintiff admits that at all relevant times, defendants Pliler, Rosario and Haythorne were

---

[2] Plaintiff's complaint originally was filed in the United States District Court for the Northern District of California.

[3] Because the complaint is lengthy and the allegations therein interrelated and dense, the undersigned has conducted a paragraph by paragraph analysis of the document.

[4] Plaintiff argues he should be excused from exhausting administrative remedies, and even from filing grievances in the first place, with respect to certain claims because exhaustion is futile.  Opp'n at 7-8.  However, futility is not an exception to the exhaustion requirement.  Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001).  Plaintiff does not show that any level of the CDC's administrative appeal process was unavailable to him despite his good faith efforts to take advantage of the process, which showing might satisfy the requirements of the exhaustion statute.

1  employed at California State Prison Sacramento (CSPS).  Am. Compl., ¶¶ 2, 4.  There is nothing

2  in grievance 99-02216 that concerns operations at CSPS or that alleges Pliler, Rosario or

3  Haythorne had any connection to the grieved events occurring at Pelican Bay.

4          While defendant Alameida was, at one time, the Director of the California

5  Department of Corrections, he was not Director prior to plaintiff's receipt of his "Director's

6  Level Decision" regarding grievance 99-02216 on September 8, 2000, nor is he now.  Opp'n at 7.

7          Based on these facts, grievance 99-02216 did not exhaust state court remedies

8  with respect to any claims in this action against Pliler, Rosario, Haythorne or Alameida.

9      C.  Grievance 02-00443

10  _____Grievance 02-00443 was first submitted by plaintiff on February 15, 2002.  MTD,

11  Ex. B; Opp'n, Ex. D at 2.  It was submitted to the "Director's Level" on March 20, 2002 and was

12  addressed by a Director's Level decision on May 22, 2002.  Opp'n, Ex. D at 1-2.  These dates

13  provide a basis for a threshold analysis of plaintiff's claims.

14          Plaintiff's claims against defendant Haythorne are based on occurrences beginning

15  on June 3, 2002, after the Director's Level Decision issued.  Am. Compl., ¶¶ 10, 50, 54.[5]

16  Therefore, because the claims against him are not exhausted, defendant Haythorne must be

17  dismissed.

18          To the extent plaintiff's remaining claims are dependent on events that happened

19  after plaintiff's appeal to the Director's Level on March 20, 2002, those claims must be

20  dismissed.  Based on this date cutoff, claims cannot be dependent on facts found in paragraphs

21  30 to 32, 36 to 38, 49 to 66, 89 to 94, 104, 109 and 123 of plaintiff's amended complaint.

22          As to the substance of grievance 02-00443, the grievance was filed on behalf of

23  six inmates and, for the most part, does not rest on the same operative facts pled in plaintiff's

24  _____

25          [5]  Haythorne is alleged to have drafted the memorandum allowing kitchen staff to change
menus and reduce rations.  In contrast, plaintiff's grievance complains about restricted access to
26  canteen purchases to supplement food needs.  See, e.g., MTD, Ex. D at 2.

1  complaint.  The grievance does not coincide with any of the specific allegations found in

2  paragraphs 67 to 83 of the complaint under the heading "Denial Of Meaningful Access To Courts

3  Claim."  Mot., Ex. B; Opp'n, Ex. D.  While grievance 02-00443 asserts plaintiff and other

4  inmates have been denied "meaningful access to courts" this does not meet the fair notice

5  requirement applicable to grievances.  See Burton, 321 F.3d at 575.  Plaintiff's "Denial of

6  Meaningful Access . . ." claim must be dismissed.

7           Following the above analysis, by process of elimination, the only claims that

8  remain are those alleged in paragraphs 27 to 29, 33 to 35 and 95 to 108 of plaintiff's amended

9  complaint.

10          Plaintiff appears to have exhausted administrative remedies with respect to the

11 allegations in paragraphs 27 to 29 and 33 to 35.  Opp'n, Ex. D.  However, plaintiff has not

12 exhausted administrative remedies with respect to the claims found in paragraphs 95 to 108.  In

13 those paragraphs, plaintiff generally claims he was retaliated against after filing grievance 02-

14 00443.  Even in his appeal to the "Director's Level," plaintiff did not allege retaliation for the

15 filing of the grievance.  Opp'n, Ex. D at 2, 5-6.[6]

16      D.  Conclusion

17          Based on the foregoing, plaintiff's claims against defendant Haythorne and Hill

18 should be dismissed, as should all of plaintiff's claims against defendants Pliler, Rosario and

19 Alameida, other than those based on paragraphs 27 to 29 and 33 to 35 of plaintiff's amended

20 /////

21

22      [6]  In his grievance, plaintiff claims that a lockdown that commenced on January 4, 2002
   was instituted in "retaliation" for an incident involving other inmates that occurred that day.
23 Opp'n, Ex. D at 4 (attachment to grievance, p. II).  Plaintiff does not claim in paragraphs 95
   to108 that the lockdown itself was "retaliatory."  In any case, the facts alleged in paragraphs 95
24 to 108 do not state a claim upon which relief can be granted.  Prison officials generally may not
   retaliate against inmates for exercising First Amendment rights.  Rizzo v. Dawson, 778 F.2d 527,
25 531 (9th Cir. 1985).  Plaintiff does not assert that the lockdown that commenced on January 4,
   2002 was in response to plaintiff's or anyone else's exercise of their First Amendment rights.
26

1  complaint.   The exhausted claims remaining are those alleging suspension of privileges and

2  denial of exercise.

3  2.  Failure To State A Claim

4            Defendants argue that plaintiff has failed to state a claim upon which relief can be

5  granted against any of the defendants.  Mot. to Dismiss at 8-12.  Because the court already has

6  determined that some of the claims in this action should be dismissed for failure to exhaust, the

7  court will address only the defendants' arguments as to the exhausted claims alleging suspension

8  of privileges and denial of exercise.

9         In considering a motion to dismiss for failure to state a claim upon which relief

10 can be granted, the court must accept as true the allegations of the complaint in question,

11 Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976), construe the pleading

12 in the light most favorable to the party opposing the motion and resolve all doubts in the

13 pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  Moreover, pro se pleadings

14 are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S.

15 519, 520 (1972).  A motion to dismiss for failure to state a claim should not be granted unless it

16 appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would

17 entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v.

18 Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651

19 F.2d 1289, 1294 (9th Cir. 1981).

20       A.  Suspension Of Privileges

21        Plaintiff claims he was denied privileges guaranteed to him under Cal. Code Regs.

22 tit. 15, § 3044(d) between January 4, 2002 and March 16, 2002 by defendants Pliler, Rosario and

23 Alameida when a "state of emergency" was declared by them at CSPS.  Am. Compl., ¶¶ 27-29,

24 /////

25 /////

26 /////

33.  Plaintiff claims he did not receive a hearing before losing his privileges.[7]  The loss of privileges included:

        1.  Family visits;

        2.  Visits during non-work / training hours;

        3.  Maximum monthly canteen draw as authorized by the Director ($180.00 monthly);

        4.  Telephone access during non-work / training hours;

        5.  Access to yard, recreation and entertainment activities limited only by security needs;

        6.  The receipt of four special packages per year; and

        7.  Special Canteen purchases.

Id., ¶ 22.  Plaintiff claims that by suspending his privileges without a hearing, Pliler, Rosario and Alameida violated his right to due process under the Fourteenth Amendment.

In Sandin v. Connor, 515 U.S. 472, 483-84 (1995), the U.S. Supreme Court held that state law creates liberty interests protected by the Fourteenth Amendment Due Process Clause only when the deprivation at issue restrains the inmate's freedom in a way not expected based on his sentence and "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin "refocused the test for determining the existence of a liberty interest away from the wording of prison regulations and toward an examination of the hardships caused by the prison's challenged action relative to the basic conditions of life as a prisoner."  Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996) (quoting Sandin, 515 U.S. at 485).

---

[7]  Plaintiff also claims inmates that were housed in administrative segregation at the same time still received privileges.  Am. Compl., ¶ 33.  However, the court does not consider this allegation because plaintiff never alleged in grievance 02-00443 that he was being treated differently than inmates in administrative segregation, and that this was somehow wrong.  Opp'n, Ex. D.

1    There is no bright line test to simplify a determination of what constitutes

2  "atypical and significant hardship" in this context, and there is a dearth of published precedent

3  applying Sandin to particularized facts.  That said, for the purpose of resolving the pending

4  motion to dismiss, this court finds that the denial of all visitors and suspension of outdoor

5  exercise for a period of two months constitutes such hardship.  Sandin, 515 U.S. at 483-84; cf.

6  Keenan v. Hall, 83 F.3d 1083 (9th Cir. 1996), amended on denial of rehearing by 135 F.3d 1318

7  (9th Cir. 1998).  Thus, plaintiff should be allowed to proceed on his denial of due process claims

8  associated with the denial of visitors between January 4, 2002 and March 16, 2002.  His outdoor

9  exercise claim is discussed more fully below.

10    B.  Outdoor Exercise

11    Plaintiff claims specifically that he was denied outdoor exercise by defendants

12  Pliler, Rosario and Alameida between January 4, 2002 and March 16, 2002 due to the "state of

13  emergency" declared.  Am. Compl., ¶¶ 34-35.  He also asserts he did not receive a hearing before

14  having his outdoor exercise privileges suspended.  Id.

15    The denial of fresh air and regular outdoor exercise constitutes cruel and unusual

16  punishment in violation of the Eighth Amendment, unless "inclement weather, unusual

17  circumstances, or disciplinary needs" make the provision of such exercise impossible.  Spain v.

18  Procunier, 600 F.2d 189, 199 (9th Cir. 1979).  In Spain, in the face of a five-month deprivation of

19  exercise, the Ninth Circuit held that "outdoor exercise [for] one hour per day, five days a week"

20  was sufficient to satisfy the Eighth Amendment.  Id.; see also Allen v. Sakai, 48 F.3d 1082 (9th

21  Cir. 1994) (six-week deprivation of exercise violated Eighth Amendment, despite logistical

22  difficulties related to SHU inmates); cf. Hayward v. Procunier, 629 F.2d 599, 603 (9th Cir. 1980)

23  (finding no Eighth Amendment violation in temporary denial of exercise during lock-down

24  instituted following incidents of gang violence, when exercise equivalent to that prescribed by

25  Spain allowed again after one month).

26  /////

8

1    In light of the minimum level of exercise prescribed by <u>Spain</u>, <u>Allen</u> and

2  <u>Hayward</u>, plaintiff's allegations regarding the two month denial of outdoor exercise state a valid

3  claim under the Eighth and Fourteenth Amendments.  Therefore, the court will recommend that

4  defendants' motion to dismiss be denied as to plaintiff's Eighth and Fourteenth Amendment

5  claims based on paragraphs 34 to 35 of plaintiff's amended complaint.

6  3. <u>November 16, 2004 "Motion For Relation Back . . ."</u>

7    Plaintiff has filed a motion asking that this action proceed on all claims exhausted

8  prior to the filing of plaintiff's amended complaint on May 14, 2003.  As noted above, plaintiff

9  may not proceed on any claims that were not exhausted prior to him initially filing suit.  42

10  U.S.C. § 1997e(a); <u>McKinney</u>, 311 F.3d at 1200.  Plaintiff's motion will be denied.

11  4. <u>Discovery</u>

12    Defendants have filed a motion asking that discovery be stayed pending the

13  outcome of their motion to dismiss.  The court will grant defendants' motion and the parties will

14  be notified by order when they can initiate discovery.  The court notes that plaintiff has filed

15  discovery requests.  Neither discovery requests served on an opposing party nor that party's

16  responses should be filed until such time as a party becomes dissatisfied with a response and

17  seeks relief from the court as provided by the Federal Rules of Civil Procedure.  Discovery

18  requests between the parties should not be filed with the court unless, and until, they are at issue.

19  The court will order that plaintiff's June 6, 2005 requests for production of documents be placed

20  in the court's file and disregarded.

21    In accordance with the above, IT IS HEREBY ORDERED that:

22    1.  Plaintiff's November 16, 2004 "Motion For Relation Back . . ." is denied.

23    2.  Plaintiff's June 6, 2005 requests for production of documents shall be placed in

24  the court's file and disregarded; and

25    3.  Defendants' request that discovery be stayed is granted.  The parties will be

26  notified when they may initiate discovery.

9

1    IT IS HEREBY RECOMMENDED that:

2    1.  Defendant Pliler, Rosario, Alameida, Haythorne and Hill's September 1, 2004

3    motion to dismiss be partially granted and partially denied, and specifically that:

4    A.  Defendants' motion to dismiss be granted to the extent that all of

5    plaintiff's claims should be dismissed without prejudice for failure to exhaust administrative

6    remedies, with the exceptions of plaintiff's claims that he was denied visitors by defendant Pliler,

7    Rosario and Alameida in violation of the Due Process Clause of the Fourteenth Amendment, and

8    that he was denied outdoor exercise in violation of the Eighth and Fourteenth Amendments,

9    between January 4, 2002 and March 16, 2002.

10    B.  Defendants' motion to dismiss be denied as to the following claims:

11    i.  That defendants Pliler, Rosario and Alameida violated plaintiff's

12    Eighth and Fourteenth Amendment rights by denying him outdoor exercise between January 4,

13    2002 and March 16, 2002.

14    ii.  That defendants Pliler, Rosario and Alameida violated

15    plaintiff's Fourteenth Amendment rights by denying plaintiff's visitors between January 4, 2002

16    and March 16, 2002.

17    2.  Defendants Haythorne and Hill be dismissed from this action.

18    3.  Defendants Pliler, Rosario and Alameida be ordered to file their answer within

19    twenty days of any order adopting the foregoing findings and recommendations.

20    These findings and recommendations are submitted to the United States District

21    Judge assigned to the case, pursuant to the provision of 28 U.S.C. § 636(b)(1). Within twenty

22    days after being served with these findings and recommendations, any party may filed written

23    objections with the court and serve a copy on all parties. Such a document should be captioned

24    "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

25    shall be served and filed with five days after service of the objections. The parties are advised

26    /////

that failure to file objections with the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 1, 2005.

_____
UNITED STATES MAGISTRATE JUDGE

1/JA/tatu2597.57(a)